**FILED**

DEC - 9 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRYAN MOORE**<br>4710 Mangum Rd.<br>College Park, MD 20740 | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | CA: |
| **LIGHTSTORM**<br>919 Santa Monica Blvd.<br>Santa Monica, CA 90401 | ) ) ) ) | Case: 1:11-cv-02198<br>Assigned To : Leon, Richard J<br>Assign. Date : 12/9/2011<br>Description: General Civil |
| **JAMES CAMERON**<br>919 Santa Monica Blvd.<br>Santa Monica, CA 90401 | ) ) ) ) | |
| **20TH CENTURY FOX, INC.,**<br>10201 West Pico Blvd.<br>Los Angeles, CA 90064 | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## COMPLAINT FOR DAMAGES,
## INJUNCTIVE AND OTHER RELIEF

**COMES NOW** Plaintiff, Bryan Moore, by and through undersigned counsel and respectfully files the immediate complaint  against Defendants Lightstorm Entertainment ("Lightstorm"),   James Cameron ("Cameron") and 20th Century Fox, Inc. for copyright infringement, implied breach of contract and tortuous interference with prospective advantage.

### INTRODUCTION

1. Bryant Moore ("Moore") is an achieved writer, businessman, artist and Howard University graduate residing in the State of Maryland.   Over the course of the last twenty (20) years he has written several creative productions, including the infringed upon productions at issue in this litigation, namely "Aquatica" and  "The Pollination",  both

original screenplays respectively copyrighted in 1994 and 2003.   Said productions were duly transmitted to Lightstorm both directly and indirectly; hence, Lightstorm and Cameron enjoyed access thereto.   Lightstorm and Cameron claim that a treatment of the movie, Avatar was created in 1999, which was not copyrighted.   Avatar was copyrighted in 2006 and released in 2009. Defendants jointly and severally without any communication with Plaintiff, and without Plaintiff's authorization, permission or credit for his creation, copied and misappropriated substantial content from  one and/or both of Plaintiff's original copyrighted screenplays from which Defendants then created and released the movie, "Avatar". Defendant's unauthorized exploitation of Plaintiff's original work constitutes a civil conspiracy to infringe on Plaintiff's copyright.    Mr. Moore alleges (i) copyright infringement, (ii) implied breach of contract, and (iii) intentional interference with prospective economic advantage .

## JURISDICTION AND VENUE

2.   This is an action for copyright infringement arising under the Copyright Act of
1976, as amended, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"). The Court has subject
matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

3.   Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400 because defendant
does business, may be found, and is subject to personal jurisdiction here having
marketed, distributed and featured the production of the Movie, Avatar in the District of
Columbia.

4.   Plaintiff Bryan Moore ("Moore") a citizen of the State of Maryland, is a Howard
University   educated   African-American   writer,   planner,   community/economic
development professional.   He has been involved in economic/community development

2

efforts involving biotech, biomedical, life sciences industry, green projects, green enterprise development, environmental health indicators/assessments/analysis, and environmental initiatives, rural development, economic analysis, workforce training, along with various community development projects.   He registered his respective copyrighted works in 1994, 2002 and 2003.  A true and correct copy of the Certificates of Registration for each work is attached herein as Exhibits 1 and 2.   Moore has never licensed nor otherwise authorized anyone else to copy, distribute, or publicly disseminate his work or any derivative works based thereupon.

## PARTIES

5.  Defendant James Cameron is a writer, producer and director.

6.  Defendant Lightstorm Entertainment ("Lightstorm") is a production company owned and operated by James Cameron.  It is organized and exists under the laws of the State of California and doing business in Santa Monica, CA.

7.  Defendant 20th Century Fox Film Corporation is a film studio which engages in the production, acquisition and distribution of motion pictures for theatrical exhibition, home entertainment, television programming, and other forms of distribution.  It is the Producer and Distributor of the movie, Avatar.   It is a corporation with its principal place of business at 10201 West Pico Boulevard Los Angeles, CA 90064.

8.  Upon information and belief, each named defendant was the agent, servant, and employee of each other defendant, acting within the course and scope of his, her, or its agency and employment with the full knowledge, consent, and ratification of each other defendant.

3

9. The motion picture AVATAR ("Film") was released in movie theaters worldwide by 20TH Century Fox Film Corporation in December, 2009. Defendants have stated that the idea for the Film was conceived by Cameron. The Film is substantially similar in all material respects to the ideas and screenplay which Moore previously disclosed to Lightstorm.

10. The Film is the highest grossing film ever produced with reported box office earnings of $2,782,275,172. It was nominated for nine (9) Academy Awards, including Best Picture and Best Director, and won three (3) Academy Awards for Best Cinematography, Best Visual Effects, and Best Art Direction. The Film also won a Golden Globe Award for Best Director. A video game prequel of the Film was released in 2009. A DVD special edition was also released and two (2) sequels to the motion picture is planned which reportedly entail the oceans of AVATAR.

**FACTS COMMON TO ALL CLAIMS**

11. Between 1992 and 1994, Plaintiff wrote and developed a screenplay entitled "AQUATICA" (the "Screenplay 1") which was duly registered with the Writers Guild of America in 1994 and with the copyright office on May 9, 1994, Registration No. PAu001853245 ).

12. In April, 2003, via his entertainment attorney, Plaintiff submitted the Screenplay to Tom Cohen ("Cohen"), Lightstorm's Creative Executive as requested by Lightstorm. Defendant Lightstorm initially informed Plaintiff they were not interested in producing the work.

13. In 1994, via a close connection and Howard University colleague, Plaintiff transmitted the Screenplay to a Production Assistant for James Cameron. Upon his receipt of the

screenplay, that individual walked the AQUATICA screenplay into Lightstorm Entertainment's offices.   Plaintiff never received a subsequent response from Lightstorm Entertainment concerning the production staffer's efforts.   In 2006, Plaintiff made revisions and copyrighted the work as AQUAPOCALYPSE, Registration no. PAu003036317.

14. In 2006, Plaintiff revised the screenplay entitled Descendants: The Pollination" (the "Screenplay 2"), registered with the Writers Guild of America in 2006 and with the copyright office on May 4, 2006 (registration no. PAu003067003).

15. Plaintiff's referenced works have copyright registration which pre-date registrations for the Project 880 screenplay/AVATAR screenplay and AVATAR, the motion picture.

16. Plaintiff possesses legitimate, valid copyright registration certificates for AQUATICA (May 1994) and DESCENDANTS: THE POLLINATION (July 2003), DESCENDANTS: THE POLLINATION (May 2006), AQUAPOCALYPSE (May 2006).

17. Upon information and belief, Defendants acquire access to Plaintiff's respective work and selectively extrapolated themes and content from each and thereafter deliberately manipulated said content in an effort to camouflage its infringement, but failed thus to effectively conceal its efforts.

18. Based thereupon, Defendants used selective and substantial extracts from his copyrighted work to develop, write and produce the movie, Avatar.

19. At all relevant times, Defendants enjoyed access to Plaintiff's original work.

20. There is substantial similarity between the copyrightable expression in Plaintiff's Original Works and the movie, Avatar.

21. Mr. Moore has never authorized, consented to, or given permission to any of the Defendants to use, reproduction, or create a derivative work based on his Original Copyrighted Screenplays.

## The Protected Work

22. Prior to 1994, Moore conceived the idea for a full length feature film entitled AQUATICA and Mr. Moore wrote the script between 1992 -1994.

23. The screenplay for AQUATICA includes (i) an entire bioluminescent rainforest that contains, among other foliage wonders, gargantuan, red tree-like plants, (ii) a bioluminescent sea jungle, (iii) bioluminescent plants hanging from the underside of vast rock structures, (iv) a man who leaves a former outfit and joins a soldiering outfit, where he works beside a female scientist and her team as a soldiering escort and the female scientist questions participation in the operation because of his military background. The story's last act includes a major battle sequences inside the bioluminescent rainforest of gargantuan red-wood tree like plants (among other flora). The Bioluminescent rainforest and/or forest of gargantuan trees would be rendered as backgrounds throughout the film.

24. Mr. Moore wrote the screenplay DESCENDANTS: THE POLLINATION (AKA THE POLLINATION) between 2002- 2003.

25. THE POLLINATION is set in a lush, exotic world covered by gargantuan, alien flora and massive super trees in a forest of giant trees/tree limbs, vast foliage, giant vines and leaves and involves among other elements a matriarch and patriarch overseeing a clan like group while the hero and heroine battle for the control of the gargantuan forest which contains bioluminescent flora. The movie reveals a character grow from being a warrior

to one who appreciates nature and the environment. The bioluminescent rainforest and/or forest of gargantuan trees are rendered as backgrounds throughout the film.

26. The date of creation for AQUATICA is May 9, 1994, which predates AVATAR. The date of creation for Descendants: The Pollination is July 2003, which also predates AVATAR. AQUATICA's effective Federal copyright registration date is May 9, 1994.

27. Plaintiff copyrighted a treatment of DESCENDANTS: THE POLLINATION in 2002. The effective date of DESCENDANTS: THE POLLINATION is July 30, 2003.

**Access to Protected Work**

28. In or around January, 2003 Moore contacted Director's Guild of America to obtain contact information for James Cameron in order to submit material and was given contact information to SSG, James Cameron's manager at the time.

29. Prior to this time, Lightstorm Entertainment and Mr. Cameron had access to AQUATICA in 1994 via production staffer Howard Gibson who, according to evidence, worked as production assistant at that time.

30. Defendant Fox had access to AQUATICA around 1995 via a production staffer, TL. TL received a copy of AQUATICA from Syracuse class mate JW, who Mr. Moore worked with at the South East Consortium for International Development (SECID) and met in Ballston, Virginia, where he provided a copy of the screenplay. JW delivered the screenplay to TL and Mr. Moore had subsequent conversations with TL about the screenplay while TL was employed at Fox. TL informed Mr. Moore that he kept the script on his desk.

31. A Substantial Similarities comparison for AQUATICA and AVATAR's scriptment will show that, in addition to access, there are similarities which exist because of this access.

32. In early 2003, Plaintiff sent AQUATICA to Toya Iella of SSG, James Cameron's Business Manager.   Phone calls concerning SSG/James Cameron's business manager include February 19, 2003 and February 20, 2003.

33. After referral from SSG, on April 7, 2003, Plaintiff sent AQUATICA to Tom Cohen, Creative Executive of Lightstorm Entertainment, Inc.   On May 19, 2003, Plaintiff sent a memo dated May 19, 2003, along with a snow globe of containing a computer drawing of an underwater city and submarines as a gracious reminder to Tom Cohen concerning AQUATICA.

34. Phone calls records to SSG and Lightstorm reveal the following:

    a.  May 20, 2003 -  Phone Call (SSG, James Cameron Business Manager).

    b.  May 20, 2003 – Phone Call (Lightstorm Entertainment, Inc.).

    c.  May 30, 2003 - Phone Call (Lightstorm Entertainment, Inc.).

    d.  June 18, 2003 – Phone Call (Lightstorm Entertainment, Inc.).

35. In July 2003, via entertainment attorney, Plaintiff sent DESCENDANTS: THE POLLINATION to Lightstorm  with script submission cover letter (Exhibit 2).

36. DESCENDANTS: THE POLLINATION was sent to Tom Cohen, Creative Executive at Lightstorm with permission from Lightstorm.   Plaintiff followed up via phone calls  to Lightstorm Entertainment, Inc. July, 2003;  October 2003  (See attached legal timeline document at Exhibit 3 ), and in February 2004 by way of communication to Tom Cohen of Lightstorm via US Postal Express Mail.

37. In April 29, 2005, Plaintiff copyrighted sketches and drawings of key scenes, characters and crafts, entitled POLLINATION ART.  The sketches were created by Plaintiff and

Plaintiff's spouse Sherri Moore. May 3, 2006 – Registered revised copy of DESCENDANTS: THE POLLINATION with Writers Guild of America (West).

38. On May 4, 2006, Plaintiff copyrighted a revised version of DESCENDANTS: THE POLLINATION which included minor edits and a few revised scenes.  These sketches were delivered to producer Sybil Danning who has a nexus with Mr. Cameron, having known him since 1980 when they worked together on the film BATTLE BEYOND THE STARS.

39.  Almost 13 years after the copyright registration for AQUATICA and over three years after the copyright registration for DESCENDANTS: THE POLLINATION, AVATAR was copyrighted by James Cameron and company (November 2006 pre-registered), while in December 2009, AVATAR was released is theaters.

40. Upon information and belief, Cameron and Lightstorm was given, shown, and read both AQUATICA and DESCENDANTS: THE POLLINATION prior to its conception and development of AVATAR.   Further, Cameron and Lightstorm had a reasonable opportunity to view and read Plaintiff's works.   Based upon the foregoing, Defendants enjoyed the "access" required to actually copy Plaintiff's work.

41. In addition to access, there is substantial similarity which infringes on Plaintiff's copyrights as a matter of law.

### Substantial Similarities

42. Mr. Moore alleges that there is substantial similarity between his works and AVATAR and that these similarities do not flow from a premise but from the copying of protected elements.  Each of the following addendums is hereby incorporated by reference.

    a. See Addendum A - Substantial Similarities Between Purported "AVATAR Scriptment" and AQUATICA.

    b. See Addendum B - Substantial Similarities Between AVATAR and AQUATICA.

    c. See Addendum C - Substantial Similarities Between AVATAR and DESCENDANTS: THE POLLINATION (AKA THE POLLINATION and/or POLLINATION).

    d. See Attachment D – Substantial Similarities Between AVATAR creature and sketch from POLLINATION ART.

43. Moore's works are filled with more than enough substantive story, plot, characters and characterization, theme, mood, pace and dialogue for Defendants to appropriate sufficient portions and to have had a substantial, positive impact on their unauthorized derivative work, Avatar.

44. Plaintiff alleges that the referenced substantial similarities are not "scenes-d-faire, or situations and incidents that flow necessarily naturally from a basic plot premise" but are situations and incidents which stem from story and the fine grain details of sequences, settings, that comprise the specific, substance of story, story events and related story elements.

45. Such factors in AQUATICA and THE POLLINATION, as appropriated in AVATAR, are not a random combination of abstract elements, but add novelty and distinctiveness to the story in that they comprise essential sequence of events, albeit arranged in a derivative manner when compared to Plaintiff's works.

46. The lists of similarities between the referenced works are inherently objective and reliable, while maintaining that any such exhaustive similarities, along with related patterns and elements, cannot be found in "very dissimilar works".

47. Review and comparison of the [works and their elements] including characters, theme, plot, setting, and mood and pace demonstrates that such similarities either consist of copyrightable elements or elements that can be considered similar based on the lists' viable examples of substantial similarity in protected expression.

**COUNT I**
**Violation of Federal Copyright Act 17 USC § 101 et seq**
**All Defendants**

48. Plaintiff incorporated paragraphs 1-47 as set forth fully herein.

49. Viable examples of substantial similarities between the Plaintiff's work and Avatar do not point to random, unprotected elements that appear in both works, but stem from distinct, detailed aspects of the copyright protected science fiction/action-adventure stories (Plaintiffs works) where action, character, settings, and character interplay are vital parts of the works.   These protected similarities definitively form the basis of substantial similarity, particularly with respect to certain key, essential plot and sequences, settings, character development, dialogue, and mood and pace that are so markedly alike. Therefore, with clear basis in fact and law to support Plaintiff's claim of copyright infringement, Plaintiff seeks immediate remedy with prejudice.

50. As a consequence of the aforementioned, Plaintiff alleges that there is a justifiable copyright infringement claim against all Defendants concerning Avatar under 17 U.S.C. § 106, and that Fox, as the corporate Defendants, contributorily infringed that copyright.

11

51. Defendants have infringed upon Plaintiff's copyright by its making an unauthorized derivative work—namely, the AVATAR based upon significant select segments of Plaintiff's copyrightable screenplays and through its unauthorized copying, distribution and public display of the movie, Avatar, its subsequent marketing and production of AVATAR in DVD form, through domestic and international sales thereof, related paraphernalia and through development of anticipated AVATAR sequels.

52. If not enjoined, Warner Bros. will continue to infringe upon Mr. Moore's copyrighted works  by continuing to advertise, market, and promote AVATAR, having released the Movie and otherwise distributed  or licensed others to distribute the Movie in various formats and distribution channels; and, by distributing or licensing derivative works

53. Defendants' conduct constitutes intentional, deliberate and, at the very least, reckless copyright infringement in disregard of Plaintiff's rights.

54. Defendants' wrongful infringement has caused irreparable injury to Mr. Moore and unless this Court restrains defendants from further use of his copyrighted work, he will continue to suffer irreparable injury for which he has no adequate remedy at law.

**COUNT II**
**Breach of Implied Contract**

55.  Plaintiff incorporates paragraphs 1-54 as set forth fully herein.

56. At the time of Moore's aforementioned conversations and communications with Lightstorm, an implied-in-fact contract ("Contract") was formed in which defendant effectively agreed it would not use Mr. Moore's ideas without paying him reasonable compensation, and affording him credit in accordance with entertainment industry customs and practices.

57. Plaintiff clearly conditioned his disclosures to Lightstorm upon an expectation that its use of his copyrighted works would result in compensation, and Lightstorm accepted Moore's works with that premise in mind.

58. A duty to pay compensation arose when Plaintiff clearly conditioned his disclosures of his copyrighted work to Defendants upon an obligation to pay, and Defendant offerees, with knowledge of that duty, voluntarily accepted the information and used the idea.

59. In releasing the Film to the public, and in preparing sequels and derivatives, some of which are mentioned herein, without compensating Moore or giving Moore any credit, defendants breached the implied Contract.

60. As a direct and proximate result of defendant's wrongful acts, defendant has been and will continue to be unjustly enriched, and Mr. Moore has suffered and will continue to suffer damages in an amount not yet fully determined.

**COUNT III**
**For an Accounting**
**All Defendants**

61. Plaintiff incorporates paragraphs 1-60 as set forth fully herein.

62. Plaintiff is entitled to a full and complete accounting with respect to all revenue derived by the Defendants, in order to determine what profits and or royalties he is entitled to.

63. The amount that the Defendants have collected is unknown to the Plaintiff and cannot be ascertained without an accounting. Plaintiff is informed and believes that the amount owed to Plaintiff exceeds $ 1,000,000,000.

## COUNT IV
### For Declaratory Relief
### Against All Defendants

64. Plaintiff incorporated paragraphs 1-63 as set forth fully herein.

65. An actual dispute and controversy now exists between the named Defendants and the Plaintiff as to the ownership/authorship of "Avatar." Plaintiff contends that he should be credited and paid as creator and co-producer thereof.

66. Plaintiff is informed and believed the named Defendants or each of them dispute Plaintiff's contention. Plaintiff, therefore, desires and requests a judicial determination and declaration of the respective rights and obligations of the parties regarding "Avatar". Plaintiff seeks to be credited and paid as a creator and co-producer on all future broadcasts, DVD releases, licenses, etc., of "Avatar", without exclusion.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in its favor and against Defendants as follows:

A. For actual damages and profits in excess of $1,500,000,000 according to proof.

B. For a preliminary and permanent injunction enjoining Defendants from infringing the copyrights of Plaintiff in any matter.

C. An accounting as to any and all gains, profits, and all other benefits related to Defendant's infringement.

D. Declaratory relief, as appropriate, relative to Plaintiff's copyright

E. Punitive damages in excess of $2,000,000.00, if and where appropriate

F. Legal fees and costs related to bringing this case, and

G. Such other relief as this court declares appropriate and necessary.

Dated: December 9, 2011

**Jury Demand**

Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Donald M. Temple (#408749)
1229 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com
*Attorney for Plaintiff*